Submitted on record and briefs March 22, reversed and remanded July 25, 2007

In the Matter of J. D.,
a Youth.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

J. D.,
*Appellant.*

Multnomah County Circuit Court
9808820352; A130416

164 P3d 1182

David Shannon and Bertoni & Todd filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Michael C. Livingston, Senior Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

In this juvenile delinquency case, youth appeals from a judgment finding him within the jurisdiction of the juvenile court for committing an act that, if committed by an adult, would constitute delivery of a Schedule I controlled substance. *Former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005). Youth assigns error to the trial court's denial of his motion to suppress evidence obtained when police conducted a warrantless search of his person after he was taken into custody for truancy, Portland City Code (PCC) 14A.80.020,[1] and for being a minor in possession of tobacco, ORS 167.400.[2] We agree with youth that the state did not demonstrate any valid basis for the search; therefore, we reverse and remand.

We review factual findings *de novo* and legal issues for errors of law. ORS 419A.200(6)(b); *State ex rel Juv. Dept. v. O'Farrell*, 191 Or App 627, 629, 83 P3d 931 (2004), *rev den*, 339 Or 230 (2005). The following facts are drawn from testimony presented at the hearing on youth's motion to suppress. On May 6, 2005, at approximately 9:30 a.m., a Portland police officer observed youth walking with several other youths on the transit mall in downtown Portland.

---

[1] PCC 14A.80.020 provides, in part:

"B. A minor who is at least seven (7) years of age and under eighteen (18) years of age and who has not completed the 12th grade may not be upon any public property or public right of way during regular school hours except while attending school as required by ORS 339.010 to 339.065 [with certain exceptions not applicable here]:

"* * * * *

"C. If a police officer has reasonable suspicion to believe that a minor is in violation of this Section, the officer is authorized to detain the minor and make reasonable inquiry regarding a potential violation of Subsection B of this Section.

"D. If a police officer has probable cause to believe that a minor is in violation of this Section, the officer is authorized to take the minor into protective custody pursuant to ORS 419B.150."

[2] ORS 167.400 provides:

"(1) It is unlawful for any person under 18 years of age to possess tobacco products, as defined in ORS 431.840.

"(2) Any person who violates subsection (1) of this section commits a Class D violation."

Because it was a school day and youth appeared to be a juvenile, the officer stopped youth and asked him how old he was. Youth responded that he was 15. The officer also observed that youth had a carton of cigarillos[3] in his pocket. The officer testified that he then placed youth in custody for "violation of minor in possession of tobacco, violation of the Truancy Statute, and, as is my practice, I was going to transport him to New Avenues for Youth, as this is not a good area. It's a dangerous area for youth to be in[.]" After handcuffing youth and reading him his *Miranda* rights, the officer performed a search of youth's pockets, consistent with the city's inventory policy. The search yielded two bindles of marijuana. During subsequent questioning, youth admitted to selling marijuana.

The state filed a delinquency petition, alleging one count of delivery of a controlled substance, *former* ORS 475.992(2)(a), and one count of possession of less than an ounce of marijuana, *former* ORS 475.992(4)(f). Before trial, youth filed a motion to suppress the evidence against him, arguing that it was obtained by means of an unlawful search and seizure in violation of his rights under the state and federal constitutions.[4] The juvenile court denied youth's motion to suppress without explanation, found him to be within the jurisdiction of the court on the delivery charge,[5] and ordered his continued commitment to the Oregon Youth Authority.[6]

---

[3] Cigarillos are small cigars.

[4] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[5] The court dismissed the charge of possession of a controlled substance.

[6] At the time of trial, youth was in the legal custody of the Oregon Youth Authority on unrelated charges.

On appeal, youth challenges the court's denial of his motion to suppress the evidence derived from the officer's search. He argues, first, that, because truancy and minor in possession of tobacco are not crimes, the officer lacked probable cause to arrest him for a crime and, consequently, the search did not fall within the search incident to arrest exception to the constitutional prohibition against warrantless searches. Youth also contends that the officer lacked authority to place him in protective custody for violation of the truancy ordinance because there was no showing that his welfare was in jeopardy as required under ORS 419B.150(1)(a). As a result, youth argues, that custody also did not form the basis for a lawful search and all evidence derived from the search should have been excluded.

The state agrees that, because youth's possession of tobacco products was a violation, it is not an offense for which an arrest is authorized and, therefore, it cannot provide a valid basis for a search incident to arrest.[7] However, the state contends that protective custody was lawful under PCC 14A.80.020 and ORS 419B.150, and, consequently, that the subsequent search was permissible as an incident of that custody, or, alternatively, pursuant to the city's inventory policy. Because the success of either argument is dependant, first, on the lawfulness of the officer's action in taking youth into custody, we begin with that question.

■ Under PCC 14A.80.020, if an officer has probable cause to believe that a minor has violated the ordinance, the officer may take the minor into protective custody "pursuant to ORS 419B.150."[8] ORS 419B.150(1), in turn, establishes that an officer may take a child into protective custody in the following circumstances:

"(a)  When the child's condition or surroundings reasonably appear to be such as to jeopardize the child's welfare;

---

[7] *See* ORS 133.310(1)(b) (a peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed a felony, misdemeanor, or unclassified offense which carries a penalty at least equal to that authorized for a Class C misdemeanor, or any other crime committed in the officer's presence).

[8] Youth does not dispute that the officer had probable cause to believe that he was in violation of the ordinance.

"(b)   When the juvenile court, by order indorsed on the summons as provided in ORS 419B.839 or otherwise, has ordered that the child be taken into protective custody; or

"(c)   When it reasonably appears that the child has run away from home."

The state suggests that truancy alone is sufficient to authorize protective custody under ORS 419B.150(1)(a). Although the state does not elaborate, it cites *State ex rel Juv. Dept. v. Stevens*, 89 Or App 467, 749 P2d 613 (1988). In that case, the youth was arrested for violating a county curfew ordinance. The youth sought to suppress evidence that was obtained during a search following his arrest. At the time, *former* ORS 419.760 provided that a minor who violated the state curfew statute, or a county curfew ordinance adopted under the authority of that statute, could be taken into custody "as provided in ORS 419.569."[9] *Former* ORS 419.569 set forth the circumstances under which a child could be taken into custody, including the circumstances now set forth in ORS 419B.150(1)(a).

The youth in *Stevens* argued that he had to fit within the circumstances of *former* ORS 419.569 before he could be taken into custody. We rejected that construction of the statute. Presuming that the legislature did not intend to enact a meaningless statute, we held:

"ORS 419.760 has a common sense meaning only if the authority to take a child into custody for a curfew violation is not limited by the specific, non-curfew related, limitations in ORS 419.569. In order to read the statutes in such a way that the authority granted to take a child into custody under both statutes is meaningful, ORS 419.760 must be read to grant authority to take a child into custody for a curfew violation, but to do so within the procedures set out in ORS 419.569."

*Stevens*, 89 Or App at 471.

---

[9] *Former* ORS 419.760 and *former* ORS 419.569 were repealed as part of a major reorganization of the juvenile code undertaken by the legislature in 1993. Or Laws 1993, ch 33, § 373. *Former* ORS 419.760 was reenacted as ORS 419C.680. Or Laws 1993, ch 33, § 271. Parts of *former* ORS 419.569 were reenacted as ORS 419B.150 and others were reenacted as ORS 419C.080. *See* Or Laws 1993, ch 33, §§ 61, 158; Or Laws 1993, ch 546, §§ 27, 59.

At first blush, it appears that this reasoning might lead us to a similar conclusion in this case. However, there is one significant and, ultimately, definitive distinction between *Stevens* and this case. In *Stevens*, the authority to take a child into custody for violation of the local ordinance derived from a state statute—*former* ORS 419.760—that specifically authorized taking a youth into custody for violation of a curfew ordinance. The state does not identify any similar source of authority with respect to the truancy ordinance in question here, nor are we aware of any.[10]

Rather, the city ordinance attempts to bootstrap on the authority granted under ORS 419B.150 by use of the phrase "pursuant to ORS 419B.150." However, that statute clearly conditions the exercise of the authority for protective custody on the existence of specified circumstances; probable cause to believe that a youth is truant in violation of a local ordinance is not one of them. We conclude that the state is required to establish that one of the predicate circumstances of ORS 419B.150 has been met; truancy alone is insufficient. *See Brown v. Zenon*, 133 Or App 291, 295, 899 P2d 666 (1995) ("Protective custody is authorized by * * * ORS 419B.150 *only* in certain circumstances." (Emphasis added.)).

The state contends that that standard was met in this case because the officer's testimony that youth was hanging out in a dangerous area "is more than sufficient to support the conclusion that [ ] youth's 'condition or surroundings reasonably appear[ed] to be such as to jeopardize [his] welfare' " as required under ORS 419B.150(1)(a), and "youth has failed to demonstrate otherwise."

■     First, the state misstates the burden of proof. The burden of proving the validity of a search is on the state, not youth. *See State v. Tucker*, 330 Or 85, 89, 997 P2d 182 (2000) (state had burden of proving that warrantless search was valid); ORS 133.693(4) ("Where the motion to suppress challenges evidence seized as the result of a warrantless search,

---

[10] Unlike in the curfew situation, there is no state law authorizing custody for truancy, although Oregon does have a compulsory school attendance law. ORS 339.010 - 339.090. A parent or guardian may be cited if a child does not attend school in compliance with that law. ORS 339.990 (failure to send or maintain a child in school is a Class C violation).

the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution."); ORS 419C.270 (ORS 133.693 applies in delinquency proceedings).

■       Keeping that burden in mind, we turn to the state's evidence. The officer testified that youth was walking with friends on the sidewalk of a downtown Portland street in the area of the bus mall at 9:30 a.m. on a school day. According to the officer, it is part of his regular routine for him to watch for juveniles in that area of downtown "[b]ecause if it's a school day during school hours and there are children down there, or juveniles, they don't belong there because of the narcotic activity in that area." He described the danger to juveniles, generally, in the following terms:

> "Well, there are lots of risks of being beat up, rolled, robbed, and—but one of the dangers that I see that endangers the kids is they're exposed to the drug usage and the drug culture down there, as when oftentimes when people drive—buy their drugs they usually use them very quickly, so we catch and arrest people right down there that are smoking crack, shooting up heroin, and that, to me, is a very risky behavior for juveniles who are not accompanied by their adult, adults to be around."

When asked to explain why those risks applied specifically to youth, he replied, "Well, any youth that is unsupervised down there has—is, I believe, a target to be taken advantage of and it's—it's just not a good idea."

Essentially, then, the officer's testimony boils down to this: Because there is heavy drug activity in this area of downtown Portland, it is possible for juveniles who are there alone to run into trouble of one sort or another. Given the generality of the officer's testimony, there was no showing of any particular risk of harm to this youth by his presence in the neighborhood that morning. If the state is correct that this is nonetheless sufficient to establish that youth's "conditions and surroundings reasonably appear[ed] to be such as to jeopardize [his] welfare," then any unaccompanied minor in any neighborhood that an officer characterizes as potentially dangerous could be placed in protective custody. That cannot be the case. That is not to say, however, that evidence

of danger to children generally would never be enough to support a determination that a particular child's welfare was in jeopardy; indeed, we can conceive of circumstances where the potential dangers may be sufficiently definite to meet the requirements of the statute. However, that is not this case. We conclude that the evidence of potential risk of harm presented in this case was too indefinite to establish the requisite showing of potential jeopardy to youth's welfare. *Cf. State ex rel Juv. Dept. v. Vanbuskirk*, 202 Or App 401, 405, 122 P3d 116 (2005) (under ORS 419B.100(1)(c), to establish juvenile court jurisdiction when a child's "condition or circumstances are such as to endanger [his or her] welfare," the key inquiry is whether, under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child); *State ex rel DHS v. Kamps*, 189 Or App 207, 214, 74 P3d 1123 (2003) ("It is the *child's* condition and circumstances that are the focus of the jurisdictional inquiry." (Emphasis in original.)).

The officer's conduct in taking youth into protective custody was unlawful; therefore, the state has failed to meet its burden to establish the validity of the search.[11] The juvenile court erred in denying defendant's motion to suppress the evidence derived from the search.

Reversed and remanded.

---

[11] We express no opinion as to whether, had youth been lawfully in protective custody, the search would have been constitutionally permissible as a search incident to that custody or pursuant to the city's inventory policy.